UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SANDRA D.,

                              Plaintiff,

        -against-                                          5:20-CV-1067 (LEK/ATB)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                              Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

This Social Security appeal is before the Court pursuant to Plaintiff's complaint filed

September 9, 2020. See Dkt. No. 1 ("Complaint"). Plaintiff seeks review of the determination

made by the Commissioner of Social Security that Plaintiff is not disabled and is therefore

ineligible for Supplemental Security Income and Social Security Disability Insurance under the

provisions of the Social Security Act, 42 U.S.C. § 301 et seq. See id. at 1; see also Dkt. No. 14

("Plaintiff's Brief") at 1–2; Dkt. No. 12 ("Record"). The Commissioner of the Social Security

Administration ("Commissioner" or "Defendant") has responded. See Dkt. No. 17 ("Defendant's

Brief"). For the reasons that follow, the Commissioner's determination of no disability is

remanded for further proceedings consistent with this Memorandum-Decision and Order.

## II.   BACKGROUND

### A.  Disability Allegations and Plaintiff's Testimony

Plaintiff is a 56-year-old woman and was 52 years old at the time of her hearing in front

of the administrative law judge ("ALJ") on May 18, 2018. Pl.'s Br. at 1–2. Plaintiff alleges a

disability onset date of April 8, 2016 and has not had substantial gainful employment since that date. R. at 10, 13. Plaintiff initially filed for disability on May 23, 2016. R. at 182–188.

Plaintiff's medical records detail issues with chronic pain from fibromyalgia, R. at 512–513, and migraines, R. at 358, 512, intestinal and bowel problems such as Crohn's disease, ileitis, and irritable bowel syndrome, R. at 723–24, 1423, and Issues with her extremities such as osteoarthritis of the knees and wrists, R. at 1166–1170, 1177–1178, 1395, carpal tunnel in the right arm, rotator cuff tendonitis, and osteoarthritis, R. at 1399. Plaintiff has also been diagnosed with sleep apnea. R. at 540, 662.

At the hearing before the ALJ on January 30, 2019, Plaintiff testified that she had graduated high school and lived with her husband. R. at 38–39. Plaintiff described previously being substantially gainfully employed as an administrative assistant for a mortgage company, answering phones and taking mortgage applications full time for seven months as well as previously working parttime at Trinity church and Watertown RX as a bookkeeper. R. at 39–40.

Plaintiff testified she suffered full body pain extending from her neck to her feet, likely due to her fibromyalgia, R. at 45, 50, and daily migraines that prevented her from focusing on work, but that several times a week were so severe she had to lie down. R. at 45–47. She described having to take multiple naps a day due to fatigue stemming from her sleep apnea and fibromyalgia, R. at 49, 59, as well as frequent problems with diarrhea due to her Crohn's disease, R. at 49–50, and not being able to bend over or use stairs due to issues with her knees, R. at 50.

Plaintiff estimated she could walk about 200 feet before needing to rest, R. at 53, sit for 45 minutes before changing positions, R. at 54, and stand for 15 minutes before having to sit, R. at 54. Plaintiff claimed she could only briefly lift a gallon of milk, R. at 53, and that she could not do chores around the house so her husband and sister had to take care of them, R. at 55.

**B.  The ALJ Decision**

*1.  ALJ's Analysis of Plaintiff's Testimony and Expert Opinions*

The ALJ issued her decision on July 26, 2019. R. at 20. Addressing Plaintiff's testimony, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 14.

The ALJ first turned to the expert opinions given by medical professionals. Regarding the opinion of consultative examiner Elke Lorensen, M.D., whom the ALJ gave partial weight, the ALJ stated that Lorensen's opinion and examination showed a reduced ability to squat, but full range of motion of the spine, normal gait, zero fibromyalgia trigger points, stable and nontender joints, full range of motion and strength in the upper and lower extremities, and full grip strength. R. at 14–15.

The ALJ likewise gave the opinion from Michael Mcelheran, PA, a provider from Plaintiff's orthopedic surgeon's office, partial weight. The ALJ said Mcelheran's opinion was consistent with his own evaluation of Plaintiff's hands in that both detailed some tenderness in both hands, but otherwise described them as normal. R. at 15.

The ALJ gave partial weight to the opinion of James Washburn, D.O., an independent medical expert. R. at 14. Dr. Washburn found Plaintiff had fibromyalgia and chronic migraines but found Plaintiff could sit for 4 hours at a time, stand for 1 hour at a time, walk for 1 hour at a time, sit for 8 hours total in a workday, and was capable of frequent reaching with both hands. R. at 1291–1300.

The opinion from Heather Machovec, PA, a physician's assistant who had treated plaintiff at her rheumatologist's office was only given limited weight. R. at 15. The ALJ found

that Machovec's opinion overestimated Plaintiff's functional limitations related to fibromyalgia given that Plaintiff had declined to pursue any further medical intervention for that issue. Id. The ALJ also found that Machovec's limitation to only low stress work was unsupported because Plaintiff had denied experienced any psychiatric symptoms like depression or anxiety. Further, Machovec's manipulative limitations, that Plaintiff could only occasionally reach or grasp, R. at 1271–72, were contradicted by diagnostic imaging showing only minimal degeneration and normal nerve conduction studies of her right arm, R. at 15. Further, the ALJ found Machovec's conclusion that Plaintiff would need to be off task 15 minutes a day and absent from work once per month was speculative and not supported by any objective evidence. Id.

The ALJ found support in the objective medical evidence for Plaintiff's claimed severe impairments. This includes treatment and prescriptions for fibromyalgia; an MRI showing evidence of migraine headaches and medication for migraines; treatment, colonoscopy and a video capsule showing evidence of IBS, Crohn's disease and ileitis; a sleep study showing evidence of sleep apnea; diagnostic images of the knees showing evidence of osteoarthritis; x-rays showing degeneration in the hands and right shoulder and tendinitis in the right shoulder; as well as a positive Phalen's test evidencing carpal tunnel syndrome in the right arm. R. at 16.

### 2.  ALJ's Analysis of Medical Examination and Objective Evidence

However, as stated above, the ALJ claimed the objective evidence contradicted Plaintiff's assertion of her limitations and showed she was capable of a range of sedentary work. R. at 17.

The ALJ stated that rheumatology records showed no active synovitis and intact range of motion. Id. Neurological evaluations showed no weakness or numbness in extremities, and full grip strength, with only mild pain in her right shoulder. Id. Other evaluations described Plaintiff's gait as normal with mild joint pain. Id.

The ALJ noted that a nerve conduction study of Plaintiff's right arm was deemed normal as was a CT scan of her neck. Id. Plaintiff's sleep apnea was described as mild and a colonoscopy showed only mild ileitis. Id. Likewise, hand x-rays showed only mild degeneration. Id.

The ALJ noted claimant's symptoms also improved with treatment. Id. Although Plaintiff experienced side effects with her fibromyalgia medications, she declined further medical intervention and described the condition as stable. R. at 18. Plaintiff also reported improvement in fibromyalgia pain with acupuncture and diet. Id. Neurology records showed her dizziness had improved and was stable. Id. Likewise her headaches had improved with medications and were stable, now "only" occurring 2 to 3 times per week. Id. The ALJ noted that Plaintiff's knee pain improved with injections and was generally improving following her right knee surgery. Id. The ALJ likewise noted Plaintiff had declined treatment for Crohn's disease and reported improvement in her sleeping. Id. She also "maintained a broad range of daily activities and still worked as of the end of 2017 as a part time realtor." Id.

### 3. *The ALJ's Disability Analysis*

The ALJ ultimately found Plaintiff was not disabled and denied her application for disability insurance benefits and supplemental security income. R. at 20. In making this determination, the ALJ analyzed Plaintiff's testimony, the underlying medical record, and the opinions of medical experts as described above. See R. at 10–20.

The ALJ found that Plaintiff met the Social Security Act's insured status requirements and had not engaged in substantial gainful activity since April 8, 2016, the alleged onset date. R. at 13. The ALJ found Plaintiff had the following severe impairments: fibromyalgia, headaches/migraines, Crohn's disease, ileitis, irritable bowel syndrome, sleep apnea, benign positional vertigo, osteoarthritis of the knees and bilateral wrists, carpal tunnel syndrome on the

right, and rotator cuff tendonitis and osteoarthritis. Id. the ALJ found that Plaintiff's issues with a rash and eye pain were not severe impairments. Id. Next, the ALJ held Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Id. Given Plaintiff's impairments and symptoms, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can stand or walk for up to one hour at a time before needing to change position for at least five minutes but retains the ability to remain on task. The claimant can frequently reach in all directions, handle, finger and feel and can occasionally use foot controls. The claimant can occasionally stoop, crouch and climb stairs and ramps but cannot balance on uneven surfaces, kneel, crawl, climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery. The claimant cannot tolerate concentrated exposure to respiratory irritants or extreme heat, cold, humidity or vibration. The claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations.

R. at 14.

The ALJ determined Plaintiff was capable of performing her past relevant work as a bookkeeper and that such work did not "require the performance of work-related activities precluded by the claimant's residual functional capacity." R. at 18. This determination was based on the opinion of Christine Ditrinco, a vocational expert, who stated that someone with Plaintiff's RFC could perform such work. Id. Accordingly, the ALJ found plaintiff was not under a disability as defined in the Social Security Act. Id.

### C.  Procedural History

Plaintiff filed her initial application for supplemental security income and social security disability insurance on May 23, 2016. R. at 182. The social security administration denied her claim on August 3, 2016. R. at 72–73. Thereafter, Plaintiff requested a hearing before an ALJ, which was held May 18, 2019. R. at 10.

6

On July 26, 2019 the ALJ issued the above-described opinion, denying Plaintiff's claim for benefits. R. at 7–20. Plaintiff requested review by the Appeals Council, which was denied on July 14, 2020. R. at 1–6.

On September 9, 2020, Plaintiff initiated the present matter. See Compl.

## III.    LEGAL STANDARD

### A.  Standard of Review

When a district court reviews an ALJ's decision denying a claim for social security benefits, it must determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," and must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence has alternatively been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). This "very deferential standard of review," Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012), requires a court to defer to an ALJ's decision if supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).

### B.  Standard for Award of Benefits

A "disability" sufficient to merit an award of benefits under the Social Security Act is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 20

C.F.R. § 404.1505(a). However, an individual seeking disability benefits "need not be

completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734

F.2d 930, 935 (2d Cir. 1984).

An ALJ undergoes a five-step evaluation process to determine whether a claimant is

disabled and eligible for disability benefits. 20 C.F.R. § 404.1520(a)(1). If the ALJ determines at

any step that the claimant is disabled or not disabled, the evaluation ends. 20 C.F.R. §

404.1520(a)(4).

At step one, the ALJ must determine whether the claimant is engaged in "substantial

gainful work activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. Id. At

step two, the ALJ must determine whether the claimant has a medically determinable

impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the

claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such an impairment, the claimant is

not disabled. Id. At step three, the ALJ asks whether the claimant's medically determinable

impairment(s) are as severe as an impairment listed in Appendix 1 of Subpart P of § 404. 20

C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If so, the claimant is disabled.

Id. At step four, the ALJ determines claimant's RFC and determines whether claimant can

perform work they performed in the past, if they can, they are not disabled. § 404.1520(a)(4)(iv).

If the claimant cannot perform past relevant work, or if the claimant does not have any relevant

past work, the ALJ decides at step five whether, given the claimant's RFC, age, education, and

work experience, they are capable of adjusting and performing "other work" that exists in

significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled. Id.

In the first four steps, the claimant bears the burden of proof. At step five, the burden shifts to the Commissioner. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

## IV.   DISCUSSION

Plaintiff argues that three of the ALJ's findings were based upon her own lay opinion and not supported by evidence in the record: (1) the ALJ's finding that Plaintiff could "stand or walk for up to one hour at a time before needing to change position for at least five minutes but retains the ability to remain on task;" (2) the ALJ's finding that Plaintiff's headaches and fibromyalgia did not warrant greater limitations, (3) the ALJ's finding that Plaintiff's arm and hand issues did not warrant greater limitations.

### A.  Substantial Evidence Supports the ALJ's RFC Finding Regarding Plaintiff's Ability to Stand, Walk, and Change Positions While Remaining on Task.

Plaintiff's argument first centers around the ALJ's sit/stand finding wherein the ALJ states Plaintiff could remain on task after changing positions. Plaintiff argues this determination is not supported by substantial evidence because the sit/stand finding relies generally on the opinion of Dr. Washburn, and his opinion "did not indicate . . . whether Plaintiff would be off task during position changes." Pl.'s Br. at 16.

However, a plaintiff bears the burden of demonstrating disability and the necessity of a greater RFC. Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018). Thus, where a record conspicuously lacks evidence showing that symptoms render a plaintiff incapable of a certain function, an ALJ may find them capable of that function. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983) (upholding ALJ's finding that plaintiff could perform sedentary work

where record discussed plaintiff's headaches, but "conspicuously . . . [lacked] any indication" that the pain rendered him unable to perform sedentary tasks) (citing Rutherford v. Schweiker, 685 F.2d 60, 63 (2d Cir. 1982)).

Here, the record discusses plaintiff's need to change positions on multiple occasions, including in PA Machovec's opinion which discussed sitting and standing and potential off-task time[1], R. at 1270, and Dr. Washburn's opinion, R. at 1295, but there is a conspicuous absence of any mention that Plaintiff's symptoms render her unable to remain on task while switching positions. It is not the case that there is simply no discussion of her sitting and standing or being off-task, which could necessitate remand to fill in gaps in the record. See Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information"). Rather, the record does address the issue, but conspicuously lacks any mention of the necessity of greater limitation, that Plaintiff cannot remain on task during or after a position switch. Thus, the ALJ was entitled to find that Plaintiff could remain on task.

Plaintiff next attacks the ALJ's finding that she would only need to remain in the changed position for 5 minutes. Pl.'s Br. at 16. Plaintiff asserts the ALJ made a specific RFC finding, but failed to provide a "tether" between the finding and the record evidence because the 5-minute minimum is not set forth in any medical opinion or evidence on the record. See id. at 17; see also Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014). However, to require remand, plaintiff

---

[1] Plaintiff correctly asserts that PA Machovec's opinion is the only opinion to specifically address off-task time. Pl.'s Br. at 16. However, her opinion merely states that Plaintiff's symptoms would be required to take one unscheduled 15-minute break during the day. R. at 1271. It does not state that changing positions would require her to be off task.

must demonstrate that the error alleged caused harm. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Given that the ALJ appropriately concluded Plaintiff could remain on task during shifts from position to position, it is unclear how the finding that Plaintiff only needed to be in the changed position for 5 minutes could materially affect the RFC or the vocational expert's analysis that Plaintiff would be able to perform her past work as a bookkeeper, R. at 289, and Plaintiff does not argue such. Thus, any error in making this finding was harmless.

### B. The ALJ Erred When Addressing Plaintiff's Symptoms Related to Headaches, Fibromyalgia, and Non-exertional Pain Limitations

#### 1. The ALJ's Decision to Give Less Weight to PA Machovec's Opinion Regarding Fibromyalgia is Supported by Substantial Evidence

An ALJ must consider an opinion from a medical professional who is not an acceptable medical source, such as PA Machovec, using the factors listed in C.F.R. § 404.1527(c)(1)-(6) and must "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." C.F.R. § 404.1527(f).

Plaintiff objects to the ALJ's treatment of PA Machovec's opinion regarding absence from work and off-task time due to fibromyalgia. Pl.'s Br. at 19. The ALJ stated she was granting PA Machovec's opinion only partial weight, in part, because PA Machovec's conclusions were "speculative and not based on any objective findings." R. at 15. Plaintiff argues that, while it may be true that the record did not contain objective evidence supporting Machovec's conclusions regarding fibromyalgia, fibromyalgia generally does not lend itself to objective evidence because of the nature of the disorder. See Pl.'s Br. at 19. Plaintiff argues it was thus error to discount the opinion due to lack of objective evidence.

It is true that a lack of objective evidence alone is generally not sufficient to contradict testimony of subjective pain or medical opinion regarding fibromyalgia. See Lim v. Colvin, 243 F. Supp. 3d 307, 316–17 (E.D.N.Y. 2017) (collecting cases). However, the ALJ cites to several other elements of the record that contradict Machovec's opinion regarding absenteeism and off-task time due to fibromyalgia. For example, the ALJ pointed out that Plaintiff reported improvement with her pain with acupuncture and a change in diet in March of 2017 when she rated her pain a 3 out of 10. R. at 18, 1145. Plaintiff also declined further medical intervention or medication for her fibromyalgia in March of 2018, R. at 1139, and in July of 2018, R. at 1356. Plaintiff again denied further medical intervention or medication in January of 2019, where she reported her fibromyalgia as "stable" and that her pain was only a moderate 5 out of 10. R. at 1329.

Given that the record establishes Plaintiff described her fibromyalgia as improving and stable at a moderate level of pain, while declining further treatment, the Court cannot say that substantial evidence does not support the ALJ's determination. See Martinez v. Berryhill, No. 17-CV-843, 2019 WL 1199393, at *15 (D. Conn. Mar. 14, 2019) (upholding ALJ decision to discount limitations due to pain where ALJ referenced records showing improvement in pain); Norberto M. v. Saul, No. 20-CV-0891, 2021 WL 4472864, at *66 (D. Conn. Sept. 30, 2021) (same).

2.  *The ALJ's Credibility Determination Regarding Plaintiff's Testimony of Headache Symptoms is Not Supported by Substantial Evidence.*

It is the role of the ALJ to appraise the credibility of witnesses in a hearing for benefits, and to accept or reject the testimony of the claimant concerning subjective complaints of pain. Ashby v. Astrue, No. 11-CV-2010, 2012 WL 2477595, at *10 (S.D.N.Y. Mar. 27, 2012) (citing Mimms v. Heckler, 750 F.2d 180, 185–86 (2d Cir. 1984)). An ALJ is "free to accept or reject" a

claimant's testimony, in whole or in part. See Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988). However, if an ALJ rejects a claimant's subjective testimony of symptoms, the ALJ must explicitly state their reasons for doing so "with sufficient specificity to enable a reviewing court to determine the legitimacy of those reasons and whether the decision is supported by substantial evidence." Ashby, 2012 WL 2477595, at *10 (citing Martone v. Apfel, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999)).

Plaintiff argues the ALJ erred by finding her testimony regarding headache symptoms non-credible.[2]

Plaintiff testified that she had migraines every day, with migraines that were a "ten" and required her to lay in bed around three times a week. R. at 47. These severe headaches would force her to lay down with ice for around an hour. Id.

The ALJ disregarded Plaintiff's testimony in part, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 14.

The ALJ later proceeded to evaluate the record evidence. The only portion referencing Plaintiff's headaches revolved almost exclusively around the effect of medication. R. at 18. The ALJ stated that Plaintiff had reported improvement in her headaches with medication, R. at 18, 365, that her medication "worked very well," R. at 18, 1337, her migraines were considered "stable with medication," R. at 18, 455, and by November of 2018, was experiencing 2 to 3 migraines per week, R. at 18, 1314.

---

[2] Plaintiff also argues that the ALJ's decision to disregard PA Machovec's opinion regarding headaches is error, Pl.'s Br. at 22, however, PA Machovec's opinion explicitly only deals with Plaintiff's fibromyalgia diagnosis, R. at 1270.

The medication referenced in each of these instances is Maxalt, or its generic form Rizatriptan. All other medications Plaintiff tried had not been effective or had intolerable side effects. R. at 1315. However, it is significant, and not addressed by the ALJ, that Plaintiff was only able to take this medication once per month on average, so she could only take one when a headache was "really, really bad." R. at 46–47. A medication that can only treat one headache per month, no matter how effective, does not contradict Plaintiff's testimony regarding limitations due to headaches, when she explicitly stated that she had 2 to 3 debilitating headaches *per week*. R. at 47, 1314.

The only other record evidence the ALJ points to that could conceivably contradict Plaintiff's testimony regarding headaches is a reference to a statement made by Plaintiff on July 25, 2018 that she was taking a single Tylenol per day, which the ALJ found "is not indicative of a disabling condition." R. at 18, 1345.

First, it is not clear from the ALJ's decision whether she intends this statement to contradict Plaintiff's testimony regarding headaches. The referenced statement was made to a physician treating Plaintiff for fibromyalgia, not headaches, and is sandwiched between the ALJ's analysis of gastroenterology records and sleep apnea records. R. at 18. Second, given the nature of afflictions such as migraine headaches, which can vary in intensity over time, a single, isolated comment of lessened pain does not necessarily contradict testimony regarding limitations caused by the affliction. See Brenda E. v. Saul, No. 5:20-CV-093, 2021 WL 66545, at *6 (N.D.N.Y. Jan. 7, 2021) (finding that isolated comments that migraines were stable or controlled did not necessarily contradict statements regarding limitations caused by the migraines due to "the nature of the condition").

14

Because the only evidence the ALJ specifically cites to show contradiction between the record and Plaintiff's testimony regarding migraines does not actually contradict that testimony, the Court finds that the ALJ's credibility determination is not supported by substantial evidence. See Tina M. v. Comm'r of Soc. Sec., No. 19-CV-1481, 2021 WL 1298492, at *3 (W.D.N.Y. Apr. 7, 2021) (remanding where elements of record that were supposedly inconsistent with plaintiff's testimony were not actually inconsistent). Further, to the extent that other evidence may have been used to contradict Plaintiff's testimony regarding migraines, such as the remark regarding Tylenol, the ALJ has not set forth these factors with sufficient specificity to enable a reviewing court to determine their legitimacy and whether the decision is supported by substantial evidence. See Ashby, 2012 WL 2477595, at *10.

Finally, the ALJ's error is not harmless. Proper evaluation of Plaintiff's testimony could lead to an altered RFC, and thus an altered determination by the vocational expert that Plaintiff could work in her former job as a bookkeeper.

Therefore, remand is appropriate for further proceedings so the ALJ may properly evaluate Plaintiff's testimony regarding migraines, and, if she still finds that it conflicts with the record, sufficiently and explicitly set forth the reasons why she has made such a finding.

### C. Plaintiff's Remaining Arguments

Because the Court orders remand, it need not address Plaintiff's other argument. Cf. Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464, 472 (W.D.N.Y. 2018) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue.").

### V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 4, 2022
            Albany, New York

LAWRENCE E. KAHN
United States District Judge